**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

**KENNETH J. PHELAN**,

                                        Plaintiff,

        - v -                                                    Civ. No. 9:10-CV-666
                                                                        (FJS/RFT)

**M. DURNIAK**, *Correctional Officer, Auburn Correctional
Facility*, **WISE**, *Sergeant, Auburn Correctional Facility*, **H.
GRAHAM**, *Superintendent, Auburn Correctional Facility*,
**HAGGETT**, *Warden, Mt. McGregor Correctional Facility*,
**BRIAN FISCHER** *Commissioner, NYS DOCS*, **AUBIN**,
*Correction Officer, Auburn Correctional Facility*,

                                        Defendants.

**APPEARANCES:**                                        **OF COUNSEL:**

**KENNETH J. PHELAN**
*Pro se* Plaintiff
09-A-1183
Marcy Correctional Facility
P.O. Box 3600
Marcy, NY 13403

**HON. ERIC T. SCHNEIDERMAN**                    **BRIAN J. O'DONNELL, ESQ.**
Attorney General of the State of New York         Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Kenneth J. Phelan brings this Amended Complaint, pursuant to 42 U.S.C.

§ 1983, alleging that Defendants (1) sexually and verbally harassed him because he is an Irish-

American with red hair; (2) violated his due process rights by placing him on shower restriction

without notice or a hearing; (3) kept him confined in constitutionally insufficient conditions; and (4)

retaliated against him for declining sexual advances and filing grievances. *See generally* Dkt. No. 16, Am. Compl. Defendants move for Summary Judgment. Dkt. No. 58. Plaintiff opposes the Motion. Dkt. No. 65. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED** in all material respects, and that this action be **DISMISSED** in its entirety.

## I. STANDARD OF REVIEW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more

than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

## II. DISCUSSION

### A. Summary of Facts

Except where noted, the following facts are uncontroverted.

From March 17, 2008 to April 24, 2009, Plaintiff was an inmate at Mt. McGregor Correctional Facility ("MMCF"). *See* Dkt. No. 58-6, William Haggett Aff., dated Aug. 9, 2012, at

¶ 4; Dkt. No. 58-7, Sally Reams Aff., dated Aug. 14, 2012, at ¶ 5.  In the early Summer of 2010,

Plaintiff was incarcerated at Auburn Correctional Facility ("ACF") where he was confined to the

Special Housing Unit ("SHU") for approximately four to five months.  *See* Dkt. No. 58-9, Kenneth

J. Phelan Dep., dated Dec. 21, 2011, at pp. 3–4 & 13–14.[1]  The showers at both ACF and MMCF

lack "separate adjustable hot and cold water valves."  Am. Compl. at ¶ 9; *see also* Dkt. No. 58-4,

Harold Graham Aff., dated Aug. 17, 2012, at ¶ 24.  Plaintiff's cell at ACF lacked running hot water,

Dkt. No. 65-1, Kenneth J. Phelan Aff., dated Jan. 19, 2013, at ¶ 2, however, Plaintiff was permitted

to request hot water in his cell, Phelan Dep. at p 18.  Also, inmates at ACF "are only allowed 5

minutes to shower, shave, shampo[o their] hair[,] cut [their] toe and finger nails, dry off, and get

dressed."  Am. Compl. at ¶ 9.

Under MMCF's "late nights" policy, inmates at the facility are permitted to stay up until 2:00

a.m. and watch TV in the television room with the doors closed, or to listen to radios in their cells

with headphones on Friday and Saturday and sometimes on Sunday if Monday is a holiday.  *Id.* at

¶ 13; *see also* Haggett Aff. at ¶ 7.  ACF does not have "late nights," instead a "quiet bell" is rung

every night at 10:30 p.m. in general population; whereas, inmates in the Special Housing Unit

("SHU") are expected to remain in their cells and keep quiet all day.  Graham Aff. at ¶¶ 3–4.

On May 12, 2010, Defendant Wise, a Sergeant at ACF, placed Plaintiff on shower

restriction.  Graham Aff. at ¶ 30; *see also* Dkt. No. 65-1, Pl.'s 7.1 Statement of Material Fact

Pursuant to Rule 7.1(a)(3) (hereinafter "Pl.'s 7.1 Statement"), at p. 11,[2] Deprivation Order, dated

---

[1] The precise dates of Plaintiff's incarceration in ACF's SHU are unclear.

[2] Plaintiff's 7.1 Statement includes various Exhibits; however, Plaintiff has not marked these Exhibits for
identification, and the entire submission lacks page numbers.  *See generally* Pl.'s 7.1 Statement.  Therefore, when
referring to the Exhibits attached to Plaintiff's 7.1 Statement, we will use the page numbers automatically assigned by
(continued...)

May 11, 2010 (hereinafter "May 11 Depriv. Order"). According to Plaintiff, this restriction lasted for "at least seven days." Phelan Aff. at ¶¶ 11–12. However, Defendants maintain that the Deprivation Order "covered the period May 12, 2010 through May 15, 2010." Graham Aff. at ¶ 30.

On May 23, 2010, Defendant Aubin supervised Plaintiff while he showered. Am. Compl. at ¶ 15; Graham Aff. at ¶¶ 5, 7, 11, 19, & Ex. 3, Surveillance Video, dated May 23, 2010. Surveillance footage from May 23 reveals that Plaintiff refused several direct orders from Defendant Aubin who was requesting that he turn over his razor, nail clippers, soap, and shampoo. *Id.* at ¶¶ 17, 19, 21, 32, & Ex. 3, Surveillance Video. On May 26, Plaintiff filed a grievance regarding the shower incident. *Id.* at ¶¶ 26–29 & Ex. 4, at Entry, dated May 26, 2010; *see also* Dkt. No. 58-10, at p. 00014, Grievance, dated May 26, 2010 (hereinafter "May 26 Grievance").

On May 30, Defendant Aubin denied Plaintiff a shower. Compl. at ¶ 15b. On June 3, 2010, Defendant Wise put Plaintiff on shower restriction once again for failing to follow shower procedures on May 23. Graham Aff. at ¶¶ 31 & 32; Pl.'s 7.1 Statement at p. 12, Deprivation Order, dated June, 3, 2010 (hereinafter "June 3 Depriv. Order"). Plaintiff alleges that the deprivation lasted "at least seven days," Phelan Aff. at ¶¶ 10 & 12, whereas, Defendants contend that the Deprivation Order "covered the period of June 4, 2010 through June 6, 2010," Graham Aff. at ¶ 31.[3]

## B. Exhaustion

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "no action shall

---

[2](...continued)
the Court's Electronic Case Management system.

[3] Plaintiff also alleged that on multiple occasions while confined at ACF, Defendants Aubin and Durniak made comments of a sexual nature to him. *See, e.g.,* Am. Compl. at ¶¶ 10 & 12. However, these comments have been omitted from the summary of facts because, as explained *infra*, these allegations were already determined to be insufficient as a matter of law for purposes of § 1983 by the Honorable Frederick J. Scullin, Senior United States District Judge. *See infra* Part II. C.

be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[4] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a

---

[4] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member, or volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

*-6-*

prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

The Second Circuit has provided a three part test to determine whether a particular claim has been exhausted. Courts should consider the following: (1) "whether administrative remedies were in fact available to the prisoner"; (2) "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense"; and (3) "[i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Macias v. Zenk*, 495 F.3d 37, 41 (2d Cir. 2007) (citing *Hemphill v. New York*, 380 F.3d 680 (2d Cir.2004)).

*1. Exhaustion of MMCF Related Claims*

With regard to Plaintiff's MMCF-related claims, Defendants point out that Plaintiff did not file a single grievance while he was at MMCF and, therefore, did not exhaust his claims that the "late nights" policy at MMCF was an unconstitutional regulation or that it created unconstitutional conditions of confinement. Dkt. No. 58-12, Defs.' Mem. of Law at p. 8. However, according to Plaintiff he was told that no grievance program existed at MMCF and was also threatened not to

pursue grievances while at MMCF. Phelan Dep. at pp. 8–9; Dkt. No. 65, Pl.'s Opp'n, at pp 2–3.[5]

A threat is sufficiently serious to render the grievance procedure unavailable where "a similarly situated individual of ordinary firmness' [would] have deemed them [un]available." *Hemphill v. New York,* 380 F.3d at 688.

Here, Plaintiff has alleged that when he attempted to file a grievance at MMCF, he was told that "[w]e don't allow inmates to file grievances. If you got a problem we'll just beat the shit out of you. You really got a problem?" Pl.'s Opp'n at p. 2. About twenty minutes later, three MMCF corrections officers ("Cos") tore up the property in his lockers, asked Plaintiff if he would like to fight, and told hm that he "better think twice about filing a grievance because, 'we have ways of dealing with assholes like you.'" *Id.* at p. 3. These CO s then filed two false misbehavior reports against him. *Id.* It is plausible that an individual of ordinary firmness would feel that the grievance process at MMCF was unavailable to him under these circumstances. The fact that Plaintiff did not file a single grievance while at MMCF may bolster his claim that he believed the process was unavailable to him.

Moreover, even if we were to accept that the grievance process at MMCF was available to Plaintiff, a question of fact remains as to whether Defendants' actions should estop them from raising the affirmative defense of exhaustion. *See Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) ("Prior cases have held that verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers" can estop defendants from raising the affirmative defense of exhaustion) (citations omitted); *see also Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 178 (2d Cir. 2006) (citing cases for the proposition that estoppel is appropriate in cases

_____

[5] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion is unnumbered. Therefore, we refer to the page numbers automatically assigned by the Court's Electronic Case Management system.

where "defendants took affirmative action to prevent [prisoners] from availing [themselves] of grievance procedures"). Therefore, we recommend that Defendants' Motion be **DENIED** as to claims that Plaintiff's MMCF related claims were unexhausted.

Nonetheless, as explained *infra*, Plaintiff's claims of constitutional violations at MMCF do not survive Defendants' Motion for Summary Judgment.

### 2. Exhaustion of ACF Related Claims

Defendants concede that Plaintiff has exhausted his claims that (1) the showers in ACF's SHU lacked independent hot and cold water controls, (2) ACF's five-minute shower policy is unconstitutional, and (3) that he was sexually harassed by Defendant Aubin on May 23, 2010. Defs.' Mem. of Law at p. 8. With regard to Plaintiff's remaining claims, we begin by noting that it is uncontroverted that ACF had a grievance procedure and that Plaintiff had availed himself of that procedure on several occasions. *See* Graham Aff. at ¶¶ 26–29 & Ex. 4, at Entry, dated May 26, 2010; Phelan Dep. at p. 9. Nonetheless, Plaintiff avers that officials at ACF harassed, threatened, and deprived him of showers in an effort to deter him from filing grievances and, in retaliation for the grievances he did file, caused him to either drop his grievances or not pursue them at all. *See, e.g.,* Am. Compl. at ¶¶ 15–15b; Phelan Aff at ¶¶ 7–11; Phelan Dep. pp. 26–27; *see also infra* Part II.H. Defendants have not produced any evidence to controvert Plaintiff's allegations that he was threatened and retaliated against. Thus, much as above, it remains a question of fact as to whether or not Defendants should be estopped from raising the affirmative defense of exhaustion with regard to Plaintiff's ACF related claims. Therefore, we recommend that Defendants' Motion be **DENIED** as to their claim that Plaintiff's ACF related claims were not exhausted.

However, as explained *infra*, all of Plaintiff's claims fail for other reasons.

### C. Verbal and Sexual Harassment

In his Original Complaint, submitted on May 31, 2010, Plaintiff alleged that he was sexually and verbally harassed by Defendants Aubin and Durniak, and verbally harassed by Defendant Wise. Dkt. No. 1, Compl. On October 27, 2010, the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, *sua sponte* dismissed these claims. Dkt. No. 13, Mem. -Dec. and Order, dated Oct. 27, 2010, at pp. 4–8.

With respect to Plaintiff's allegations that he was sexually harassed by Defendants Durniak and Aubin, Judge Scullin noted that "[a]s against each Defendant, Plaintiff has complained about a single isolated instance of improper verbal sexual harassment, with no allegation of contact or that Plaintiff was physically harmed. The conduct alleged, while clearly distasteful is not 'severe enough to be objectively, sufficiently serious.'" *Id.* at p. 7 (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d. Cir. 1997)). With regard to Plaintiff's allegation that he was verbally harassed by Defendant Wise, Judge Scullin also noted that as a matter of law "allegations of verbal harassment are insufficient to support a § 1983 claim." *Id.* at p. 8 (citing, *inter alia*, *Johnson v. Eggersdorf*, 8 F. App'x 140, 143 (2d Cir. 2001)).

On November 19, 2010, Plaintiff filed an Amended Complaint.[6] On March 29, 2011, Judge Scullin ordered that the Amended Complaint be accepted for filing and supersede the Original Complaint; however, "the Court expresse[d] no opinion as to whether Plaintiff's claims [could]

---

[6] Ordinarily, under the prison mailbox rule, inmate pleadings are considered filed on the date that they are signed and delivered to prison authorities for filing with the district court. *See Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005). However, the signature page of Plaintiff's Amended Complaint is a photocopy of the signature page from his Original Complaint, and retains the May 31, 2010 date of the Original Complaint. Am. Compl. We are unable to determine which date the Amended Complaint was actually signed and delivered to prison authorities, and yet this date is irrelevant to our analysis; we will use November 19, 2010, the date on which it was marked as filed by the Court's Electronic Case Management system. *Id.*

withstand a properly filed motion to dismiss or for summary judgment." Dkt. No. 18, Order, dated Mar. 28, 2011, at p. 2. Plaintiff's Amended Complaint is nearly identical to his Original Complaint with the exception of some minor technical changes and the addition of one new paragraph. *Compare* Original Compl. *with* Am. Compl.; *see also* Dkt. No. 58-12, Defs.' Mem. of Law, at pp. 2–3.

Plaintiff's Amended Complaint fails to add any additional details regarding the alleged sexual and verbal harassment that occurred at either ACF or MMCF that would push Plaintiff's claim from "distasteful" to sufficiently serious for purposes of the Eighth Amendment. *See* Am. Compl. at ¶ 15c. Moreover, even if we were to consider the additional allegations that Plaintiff includes in his Affidavit in Opposition to Defendants' Motion, such as his claim that Defendant Aubin offered to give him an extra tray in exchange for anal sex, Plaintiff's claim would still fail. *See* Phelan Aff. at ¶ 5. Plaintiff has failed to allege a single instance of sexual harassment that involves either contact or physical harm. Indeed, in his Deposition, Plaintiff admits that there was never any physical "sexual" contact between himself and any of the Defendants. Phelan Dep. at pp. 27–28. Therefore, Plaintiff's allegations amount to nothing more than inactionable verbal harassment. *Johnson v. Eggersdorf*, 8 F. App'x at 143.

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's verbal and sexual harassment claims against Defendants Durniak, Aubin, and Wise.

### D. Equal Protection

The equal protection clause of the Fourteenth Amendment requires the government to treat all similarly-situated people alike. See *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1989). To state a claim for a violation of the equal protection clause, a plaintiff must show that he

was intentionally treated differently from others similarly situated as a result of intentional or "purposeful discrimination . . . directed at an identifiable or suspect class. . . ." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citations omitted).

In his Original Complaint, Plaintiff claimed that "Defendant Aubin violated [his] equal protection right by watching and sexually harassing [him] in [the] shower[.]" Original Compl. at Eighth Cause of Action. Upon initial review, Judge Scullin dismissed this claim, noting that:

> Although the court must construe the factual allegations in a complaint in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *[Ashcroft v.] Iqbal*, [566 U.S. 662, 678 (2009)]. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Moreover, "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd,* 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *Pourzandvakil v. Humphry*, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (quotation omitted).

Dkt. No. 13, Mem.-Dec. and Order.

Plaintiff's Amended Complaint mirrors his Original Complaint in nearly every respect, with only one exception, the addition of paragraph 15c, which states:

> This is the Amended portion of this complaint, since the court has, I believe, dismissed in error, my claim of equal protection against defendants Durniak and Aubin because I did not add one simple sentence. Of course these defendants treated me differently from other similarly-situated inmates. These defendants don't go around sexually harassing everyone. These defendants treated me differently from other similarly-situated inmates by sexually harassing only me because of my identifiable class of Irish-American with red hair. This violates my equal protection right.

Am. Compl. at ¶ 15c.

Plaintiff's intimation that the sole deficiency in his original equal protection claim was the omission of a single sentence clearly evinces Plaintiff's misunderstanding of both Judge Scullin's ruling and the pleading requirements of a civil complaint. Plaintiff's attempt to remedy his first conclusory

pleading by adding a single bald face conclusory allegation – that Plaintiff was discriminated against because of his ethnicity and hair color – is unavailing. Standing alone, without the addition of some other factual allegation(s) from which it could plausibly be inferred that such discriminatory animus actually existed, such an allegation does not nudge Plaintiff's claim from the merely possible to the plausible let alone raise a genuine issue of material fact sufficient to survive a properly supported motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (1991). Therefore, because Plaintiff's Amended Complaint does not state a cause of action for a violation of the equal protection clause we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's equal protection claim against Defendants Aubin and Durniak.

### E. Conditions of Confinement

Plaintiff alleges that (1) noise levels at ACF and MMCF caused him to lose sleep, Am. Compl. at ¶ 13 & Fifth Cause of Action; (2) the showers in ACF's and MMCF's SHU lacked independent hot and cold water controls and, therefore, the temperature of the water was always too hot or too cold, *id.* at ¶¶ 9, 11, & Second Cause of Action, Phelan Aff. at ¶ 3; (3) his cell lacked running hot water, Pl.'s Opp'n at pp 7–8; (4) at ACF he was provided only five minutes to shower, shave, clip his toe and finger nails, and dry off, Am. Compl. at ¶ 9 & Third Cause of Action; (5) while at ACF Defendants Wise and Durniak took his shower privileges away on May 11 and June 3, 2012, each for a period of approximately one week, leaving him unable to care for his personal hygiene, *id.* at ¶ 12 & First Cause of Action; Phelan Aff. at ¶¶ 10–12; and (6) Defendant Aubin denied him a shower on May 30, 2010, Am. Compl at ¶ 15b. Construed liberally, these allegations can be interpreted as raising a conditions of confinement claim pursuant to the cruel and unusual

punishment clause of the Eighth Amendment.[7]

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling* [*v. McKinney*], 509 U.S. 25, 32 [1993] (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id.* at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id.* at 35-36; *Rhodes* [*v. Chapman*], 452 U.S. 337[,] 347 [(2002)].
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer* [*v. Brennan*], 511 U.S. [825,] 837 [(1994)].

*Phelps v. Kapnolas*, 308 F.3d at 185-86.

Additionally, "[e]ven if no single condition of confinement would be unconstitutional in itself, exposure to the cumulative effect of prison conditions may subject inmates to cruel and unusual

---

[7] Plaintiff's claim that the deprivation of his shower privileges without prior notice or a hearing violated his due process rights is discussed separately, *see infra* Part II.F, as are Plaintiff's claims that the five-minute time limit on showers, the inability to control the shower temperature, and the "late nights" policies are unconstitutional, *see infra* Part II.G.

punishment." *Rhodes v. Chapman*, 452 U.S. at 363 (internal quotation marks and citation omitted). In this regard, "conditions of confinement may be aggregated to rise to the level of a constitutional violation, but 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). Here, Plaintiff complains of deprivations affecting two categories of human need: (1) the need for sleep, and (2) the need to maintain personal hygiene. As explained below, however, even when considered in the aggregate, the conditions of which Plaintiff complains are not objectively sufficiently serious for purposes of the Eighth Amendment.

### *1. Conditions Affecting Sleep*

It has been noted that "sleep is critical to human existence, and conditions that prevent sleep have been held to violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d at 126 (citing cases).

Here, Plaintiff claims that he suffered sleep loss while at ACF because "the inmates are extremely noisy, yelling and shouting all day and night." *Compare* Pl.'s 7.1 Statement at ¶ 16 *with* Defs.' 7.1 Statement at ¶ 16. Plaintiff further alleges that Defendant Graham is responsible for these conditions. Am. Compl. at ¶ 13. Yet, Plaintiff fails to proffer any other factual allegations with regard to how long this condition persisted, how often Plaintiff was unable to sleep, and most importantly, how, if at all, the noise effected his overall health or safety. Contrariwise, Defendants have submitted uncontroverted evidence that at ACF a "quiet bell" is rung every night at 10:30 p.m. in general population after which inmates are required to remain quiet until the following morning; and inmates in ACF's SHU are expected to remain in their cells and be quiet all day. Graham Aff. at ¶¶ 3 & 4. Plaintiff's vague, conclusory, and unsupported allegations do not raise a triable issue

of fact regarding the issue of whether the noise level at ACF was objectively sufficiently serious for purposes of a conditions of confinement claim. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Plaintiff has also failed to link Defendant Graham to the alleged noisy condition. Indeed, Plaintiff fails to allege that Defendant Graham was even aware of the noise level at ACF or Plaintiff's inability to sleep. As a result, Plaintiff cannot establish that Defendant Graham was deliberately indifferent toward the alleged risk to Plaintiff's health posed by the noisy conditions at ACF. *Phelps v. Kapnolas*, 308 F.3d at 185-86.

Plaintiff also claims that he was unable to sleep while at MMCF because of the "late nights" policy which permitted inmates to watch TV or listen to their radios loudly until two in the morning on weekends and holidays. Am. Compl. at ¶ 13. Plaintiff further alleges that as a result he only got four hours of sleep on these nights and suffered migraines, *id*., and "sometimes [he] would not be allowed to eat breakfast because [he] did not get up early enough[,]" Phelan Aff. at ¶ 20. Plaintiff does not remember whether he received treatment for his migraines while at MMCF, but acknowledges that he suffered from migraines since the age of nineteen. Phelan Dep. at pp. 24–25. Even accepting these allegations as true, Plaintiff has failed to identify an objectively serious risk to his health or safety. Essentially, Plaintiff complains that the noise from the television on Friday and Saturday nights made it difficult for him to fall asleep before 2:00 a.m. on those days. However, aside from his conclusory allegation that this noise aggravated his pre-existing migraine condition, it did not affect his health or safety in any appreciable way. Therefore, Plaintiff has failed to establish the first element of a conditions of confinement claim. *See Phillips v. Roy*, 2011 WL 3847265, at *15 (N.D.N.Y. Aug. 29, 2011) (holding that plaintiff's allegations that constant noise

from a broken pipe "interrupted his sleep[,] fail[ed] to meet the objective element of an Eighth Amendment inquiry [because] [a]lthough undoubtedly annoying, such conditions do not evince a serious risk of harm"). Moreover, as explained below, Plaintiff has failed to establish the subjective element of this claim as well.

Plaintiff alleges that MMCF's Warden, Defendant Haggett, is responsible for his sleep loss. Am. Compl. at ¶ 13 & Fifth Cause of Action. Yet, by his own admission, Plaintiff "has never seen Defend[ant] Haggett in [his] dorm after 11pm on late nights so [Defendant Haggett] has no clue how noisy it is then." Phelan Aff. at ¶ 17. Nor does Plaintiff allege that Defendant Haggett was put on notice of the noise issue at MMCF or Plaintiff's migraines or sleeping problems via some other means. As a result, Plaintiff cannot establish that Defendant Haggett was deliberately indifferent toward the alleged risk to Plaintiff's health and safety posed by the noisy cell conditions. *Phelps v. Kapnolas*, 308 F.3d at 185-86.

Accordingly, we recommend that Defendants' Motion be **GRANTED** with regard to Plaintiff's claims that MMCF's Warden, Defendant Haggett, and ACF's Superintendent, Defendant Graham, maintained constitutionally inadequate conditions at their facilities which affected his ability to sleep.[8]

---

[8] Plaintiff did not specifically allege that Defendant Fischer was responsible for the noisy conditions at MMCF and ACF. *See* Am. Compl. at Fifth Cause of Action. Yet, elsewhere in his Amended Complaint Plaintiff specifically names Defendant Fischer along with Defendants Graham and/or Haggett for constitutional violations that allegedly occurred at their respective facilities. *See, e.g.,* Am. Compl. at Second, Third, and Ninth Causes of Action. However, even if we were to liberally construe Plaintiff's Amended Complaint as intending to allege that Defendant Fischer was responsible, in his supervisory capacity, for the noisy conditions at ACF and MMCF, such a claim would fail because, as explained above, Plaintiff failed to sufficiently allege a conditions of confinement claim with regard to the noise levels at either facility, and therefore, cannot maintain an action for supervisory liability against Defendant Fischer. *Alston v. Bendheim*, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying constitutional violation forecloses supervisory liability."); *see also Arredondo v. Cnty. of Nassau*, 2012 WL 910077, at *7 n.8 (E.D.N.Y. Mar. 16, 2012) (citing *Alston v. Bendheim*).

## 2. *Conditions Affecting Personal Hygiene*

It is clear that inmates have a constitutional right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *See Walker v. Schult*, 717 F.3d at 127 (citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation").

Plaintiff claims that he was unable to wash, shave, or clip his nails because Defendants Wise and Durniak separately issued a Deprivation Order denying him shower privileges for a week in May and a week in June, respectively, and that he was unable to wash himself in his cell because the cells at ACF do not have hot running water. *See* Am. Compl. at ¶ 12 & First Cause of Action; Phelan Aff. at ¶¶ 10–12; Pl.'s Opp'n at pp. 7–8. Plaintiff has also alleged that Defendant Aubin denied him a shower on May 30, 2010. Am. Compl. at ¶ 15b. These deprivations, even when considered together, are not objectively sufficiently serious for purposes of an Eighth Amendment conditions of confinement claim.

To begin with, Plaintiff's allegation that the shower Deprivation Orders each lasted for "at least seven days[,]" Phelan Aff. at ¶¶ 10–12, is not borne out by the record. Rather, it is clear that the May 11 Deprivation Order issued by Defendant Wise lasted for four days between May 12 and May 15, and the June 13 Deprivation Order issued by Defendant Durniak lasted for three days between June 4 and June 6. *See* Graham Aff. at ¶ 31; May 11 & June 3 Depriv. Orders (containing hand written notations confirming the dates provided by Defendant Graham). Even in the aggregate, Plaintiff's total eight-day loss of shower privileges – four days between May 12 and May 15, one day on May 30, and three days in June – simply does not constitute an objectively serious deprivation for purposes of the Eighth Amendment. Indeed, even if Plaintiff had been deprived for

*-18-*

a total of two one week periods, and for one day on another occasion as he claims, such a deprivation would still be insufficient to satisfy the objective element of a conditions of confinement claim. *See Dillon v. City of New York*, 2013 WL 3776167, at *2 (S.D.N.Y. July 18, 2013) (citing cases); *see also Johnson v. Colvin*, 2013 WL 775357, at *4 (W.D.N.Y. Feb. 28, 2013) (citing cases for the proposition that "[s]everal district courts within the Second Circuit, . . . have held that temporary deprivations of showers for periods of approximately two weeks, . . . do not satisfy the objective component of a claim of cruel and unusual punishment"); *Phillips v. Roy*, 2011 WL 3847265, at *14 (N.D.N.Y. Aug. 29, 2011) (citing, *inter alia*, *Trammell v. Keane*, 338 F. 3d 155, 165 (2d Cir. 2003), for the same proposition); *see also Gardner v. Mental Health Unit of Sullivan Corr. Facility*, 2009 WL 1834382, at *2 (S.D.N.Y. June 17, 2009) (citing cases for the proposition that "denying a prisoner the opportunity to shower for seven days and withholding toiletries, while uncomfortable, does not endanger an inmate's health and safety"); *Cf. Beckford v. Portuondo*, 151 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (finding that a week-long shower deprivation presented a sufficiently serious deprivation, but only because defendants were aware that plaintiff suffered from a medical condition that required he take extra precautions when it came to personal hygiene to avoid medical complications).

Indeed, even when taking into consideration Plaintiff's allegation that he lacked running hot water in his cell during these periods, such claims still do not transcend the objective threshold established by the Second Circuit. *See Phelps v. Kapnolas*, 308 F.3d at 185-86. Particularly here, where Plaintiff had access to hot water in his cell by request. *See* Phelan Dep. at p 18; *see also Beckford v. Portuondo*, 151 F. Supp. 2d at 210–11 (finding no deprivation, where officers denied inmate a shower followed by the suspension of in-cell water privileges for six days, in light of the

fact that the inmate was able to request hot water in his cell).

Likewise, even considering the aforementioned deprivations together with the lack of running hot water in Plaintiff's cell, the fact that Plaintiff was unable to control the water temperature of the shower, and that he had only five minutes to shower, shave, clip his toe and finger nails, dry off, and get dressed, Plaintiff fails to surmount the objective threshold of a conditions of confinement claim. Plaintiff does not allege that the water in the showers was so cold or so hot as to be dangerous, or that the inability to control the temperature made it impossible for him to shower. Nor does Plaintiff show that he is unable to maintain his personal hygiene, or that he was denied the necessary tools, or that his inability to perfectly maintain his hygiene has adversely affected his overall health. Likewise, the lack of running hot water in Plaintiff's cell, while inconvenient, does not represent the denial of a basic human need or present a danger to Plaintiff's health or safety; particularly in light of the fact that Plaintiff was able to, and in fact did, request that hot water be delivered to his cell. Phelan Aff. at p. 18; *see also Beckford v. Portuondo*, 151 F. Supp. 2d at 211 ("Now where has it been held that prisoners are entitled to complete or unfettered access to water or showers.").

Accordingly, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's conditions of confinement claims against Defendants Durniak, Wise, and Aubin. Moreover, having found no indication that these conditions violated his Eighth Amendment rights, we also recommend that Defendants' Motion be **GRANTED** as to Plaintiff's claims that Defendant Graham, ACF's Superintendent, and Defendant Fischer, the Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS"), were responsible for these personal hygiene related conditions in their supervisory capacities. *See* Am. Compl. at Second, Third, & Ninth

Causes of Action.

## F.  Due Process

To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest.  *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).  Inmates' liberty interests are typically derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations.  *Id*.

### 1.  Liberties created under the Due Process Clause

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners.'"  *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)).  The Due Process clause does not protect against "every change in the conditions of confinement having a substantial adverse impact" on inmates if those changes are "within the normal limits or range of custody which the conviction has authorized the state to impose." *Sandin v. Conner*, 515 U.S. 472, 478 (1995).  Instead, the Due Process Clause protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner." *Id*. at 484 (quoted in *Arce v. Walker*, 139 F.3d at 333).

### 2.  Liberties created by the State

State statutes and regulations may also confer liberty interests on prisoners.  *Arce v. Walker*, 139 F.3d at 334 (citing *Kentucky Dep't of Corr.*, 490 U.S. at 460).  Prior to the Supreme Court's decision in *Sandin v. Connor*, 515 U.S. 472 (1995), the struggle to define the contours of state created liberty interests rested with the district courts, who would engage in the arduous task of

scrutinizing state statutes and administrative regulations to determine whether the state had "gone beyond issuing mere procedural guidelines and had used 'language of an unmistakenly mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" *Lee v. Coughlin*, 26 F. Supp. 2d 615, 629 (S.D.N.Y. 1998) (quoting *Hewitt v. Helms*, 459 U.S. at 471-72); *see also Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999). Such methodology, according to the *Sandin* Court, produced two undesirable effects:

> First, it create[d] disincentives for States to codify prison management procedures in the interest of uniform treatment. . . . Second, the *Hewitt* approach [] led to the involvement of federal courts in the day to day management of prisons, often squandering judicial resources with little offsetting benefit to anyone.

*Sandin*, 515 U.S. at 482.

Recognizing the fallacy of such methodology, the Supreme Court held that states may still create liberty interests for inmates in remaining free from solitary confinement, thereby requiring some process precede the segregated confinement; however, such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483–84; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*, 515 U.S. at 484); *Welch v. Bartlett*, 196 F.3d at 392. Thus, a prisoner asserting that he was denied due process in connection with segregated confinement or a loss of privileges must make a threshold showing that the deprivation of which he complains imposed such an atypical and significant hardship.

After *Sandin*, to assert a state created liberty interest, an inmate must establish that his confinement or restraint (1) created an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, and (2) that the "state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that

confinement or restraint," *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996).

Here, Plaintiff argues that the Deprivation Orders issued by Defendants Durniak and Wise on May 11 and June 3 2010, rescinding his shower privileges, violated his due process because he was not provided with adequate notice or a hearing. Am. Compl. at Second Cause of Action. Under New York State Regulations, SHU inmates must be given a minimum of two showers per week. *See* N.Y. COMP. CODES R. & REGS. tit. 7 § 304.5(a). However, absent proof that a deprivation would result in an atypical and significant hardship, "a mandatory obligation of prison officials for the prisoner's benefit is insufficient in itself to create a due process right enforceable by an action under § 1983[.]" *Welch v. Bartlett*, 196 F.3d at 392. Here, Plaintiff has failed to establish that he suffered an atypical or significant deprivation.

As established above, Defendants deprived Plaintiff of his showers for a period of three days in May and a period of four days in June. *See supra* at Part II.D(2). Simply stated, the loss of shower privileges for two separate periods of three and four days respectively is neither atypical nor significant. *See, e.g., Baskerville v. Blot,* 224 F. Supp. 2d 723, 727 & 736 (S.D.N.Y. 2002) (citing *Arce v. Walker*, 139 F.3d at 337 for the proposition that fifteen days of shower deprivation "while undesirable did not deprive [the inmate] of his right to due process under the Fourteenth Amendment").

Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's due process claims against Defendants Wise and Durniak.

### G. Shower & Late Night Policies

Plaintiff alleges that the five-minute shower policy maintained by ACF, the policy prohibiting inmates from controlling the temperature of the water in the showers maintained at ACF

and MMCF, as well as MMCF's late nights policy are unconstitutional prison regulations.

The Supreme Court has held that when a prison policy violates a prisoner's constitutional rights, courts should employ a reasonableness test, as opposed to a stricter standard, which would normally be applied in constitutional deprivation cases. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987). Therefore, a prison regulation that impinges upon an inmate's constitutional rights may be valid, despite such encroachment, if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. at 89; *Farid v. Smith*, 850 F.2d 917, 925 (2d Cir. 1988). However, "a court need only examine penological objectives *if* a constitutional right is implicated." *Kelsey v. Cnty. of Schoharie*, 567 F.3d 54, 69 (2d Cir. 2009) (Sotomayor, J. dissenting) (citing *Turner v. Safley,* 482 U.S. at 89) (emphasis in original).

Here, Plaintiff has failed to establish that any of the policies at issue violated his constitutional rights. Therefore, we need not analyze these claims any further. Accordingly, we recommend that these claims be **DISMISSED.**

## H. Retaliation

Plaintiff alleges that (1) on May 23, 2010, Defendant Aubin told Plaintiff that if he filed a grievance against him he would make his life a "living hell" and that "this [was his] SHU and [Phelan] don't get nothing [sic] without [him,]" Am. Compl. at ¶ 15; (2) on May 30, 2010, Defendant Aubin refused to allow Plaintiff to shower in retaliation for having rejected his sexual advances, Phelan Aff. at ¶ 9; (3) on May 27, 2010, Defendant Wise made various verbal threats to Plaintiff in order to force Plaintiff to drop the grievance he filed on May 26; *id.* at ¶ 10, *see also* May 26 Grievance; and (4) on June 3, 2010, Defendant Wise "carried out" his threats by placing Plaintiff on shower deprivation for a period of one week in retaliation for the May 26 grievance, *id.* at ¶ 10;

Am. Compl. at ¶ 15a; *see also* Graham Aff. at ¶¶ 26–29 & Ex. 4, at Entry Dated May 26, 2010; *see also* May 26 Grievance.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d

-25-

126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. To satisfy the second prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d at 872-73. A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

### 1. Defendant Aubin

Plaintiff's claims that Defendant Aubin verbally threatened him not to file a grievance on

one occasion, and denied him a shower in retaliation for filing a grievance on another occasion, are insufficient as a matter of law. It is well established that "verbal threats, . . . are patently insufficient to establish adverse action and support a plausible retaliation claim." *Johnson v. Brown*, 2010 WL 6243352, at * 7 (N.D.N.Y. Sept. 3, 2010) (citing cases). Likewise, the loss of a single shower is too *de minimis* in that it would not deter a similarly situated individual of ordinary firmness from exercising their constitutional rights. *See Beckles v. Bennett*, 2008 WL 821827, at *25 (S.D.N.Y. Mar. 26, 2008) (citing cases for the proposition that the denial of a single shower does not constitute an adverse action for purposes of a retaliation claim); *see also Suarez v. Kremer*, 2008 WL 4239214, at *8 (W.D.N.Y. Sept. 11, 2008) (citing cases for the same conclusion).

Therefore, we recommend that Plaintiff's retaliation claims against Defendant Aubin be DISMISSED.

### 2. *Defendant Wise*

As with claims alleged against Defendant Aubin, Plaintiff's claim that Defendant Wise verbally threatened him on May 27, 2010, is insufficient as a matter of law for purposes of a retaliation claim. *Johnson v. Brown*, 2010 WL 6243352, at * 7.

Secondly, Plaintiff's allegation that Defendant Wise revoked his shower privileges for a week on June 3 because Plaintiff filed a grievance on May 26 is also insufficient. If we accept the allegations as true, Plaintiff may have established a *prima facie* retaliation claim. It is unquestionable that filing a grievance is a constitutionally protected exercise. *Jones v. Coughlin,* 45 F.3d at 679-80. And, it is plausible that a similarly situated prisoner of ordinary firmness would be deterred from exercising such a right if faced with the revocation of shower privileges for an entire week. Moreover, the temporal proximity of the revocation to the filing of the grievance, here just seven days, certainly weighs in favor of Plaintiff's claim.

However, in situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)); *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994) (cited in *Carpio v. Walker*, 1997 WL 642543, at *6 (N.D.N.Y. Oct. 15,1997)). Defendants can meet that burden with regard to a particular punishment by demonstrating that plaintiff committed the most serious of the prohibited conduct charged in the misbehavior report. *Gayle v. Gonyea*, 313 F.3d 677, 684 (2d Cir. 2002) (citing *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998)).

Here, proof submitted by Defendants clearly establishes that Defendants had a non-retaliatory justification for issuing the June 3 Deprivation Order. The Record reveals that the June 3, 2010 Deprivation Order was issued due to Plaintiff's "[f]ailure to comply with Special Housing Unit shower procedures." June 3 Depriv. Order; *see also* Graham Aff. at ¶¶ 31 & 32. Additionally, Defendants submitted surveillance footage and accompanying audio which confirms that on May 23, 2010, Plaintiff ignored several direct orders from Defendant Aubin to turn over his razor, nail clippers, shampoo, and soap. *See* Graham Aff. at ¶¶ 5, 7, 10–11, 17, 19, 21, 32, & Ex. 3, Surveillance Video. Moreover, prison regulations allow shower privileges to be revoked "when it is determined that a threat to the safety or security of staff, inmates, or State property exists." *See* N.Y. COMP. CODES R. & REGS. tit. 7 §§ 304.5(f) & 305.2(a). Thus, because it is clear that Plaintiff refused a direct order to return state property (here, a razor, soap, and nail clippers), Defendant Wise was well within his rights to revoke Plaintiff's shower privileges, and therefore, Defendants have clearly established a non-retaliatory justification for issuing the June 3 Deprivation Order. Plaintiff,

on the other hand, does not offer any evidence to controvert Defendants' evidence, showing that he refused to comply with Defendant Aubin's orders on May 23.

Therefore, we recommend that Plaintiff's retaliation claim against Defendant Wise be **DISMISSED**.

## I. Failure to Train

Plaintiff alleges that Defendant Fischer, the Commissioner of DOCCS, violated his constitutional rights "by failing to inform staff of[,] and train them on[,] policies designed to avoid constitutional deprivations." Am. Compl. at Sixth Cause of Action.

It is well established that "the doctrine of respondeat superior cannot be used to establish liability [of a supervisory official] under § 1983. *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir.1999). Rather, liability under § 1983 turns on a defendant's personal involvement in the alleged constitutional deprivations. *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986); *see Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994). The personal involvement of supervisory officials has been found where there was

> (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.2003) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995)).

Here, Plaintiff cannot establish that any constitutional violations resulted from Defendant Fischer's failure to properly train his subordinates. Therefore, we recommend that Defendants' Motion be **GRANTED** as to Plaintiff's failure to train claim against Defendant Fischer.

*-29-*

## III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 58) be **DENIED** as to exhaustion and **GRANTED** in all other respects and this action be **DISMISSED**; and it is further

           **ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   September 25, 2013
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge